UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JAMES RICHARD DUPREE** | * | **CIVIL ACTION NO.  11-0348** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

James R. Dupree protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on October 3, 2005. (Tr. 105-106, 249-256). He alleged disability as of July 21, 1995, because of a bad back, ulcers, a heart condition, diabetes, and depression. (Tr. 107, 270, 274). His Title XVI claim was granted at the initial stage of the administrative process, with an eligibility date of October 1, 2005, – the month that he filed his claim. (Tr. 108). However, his Title II claim was denied at the state agency level. (Tr. 107, 123-126). Thereafter, Dupree requested and received a May 7, 2008, hearing before an Administrative Law Judge ("ALJ"). (Tr. 95-104). At the hearing, ALJ Gollmitzer indicated that he intended to the decide the matter favorably for Dupree. *Id*. Thus,

Dupree understandably was taken aback when he received a written decision signed by ALJ Osly Deramus that denied his Title II claim because he did not establish disability prior to December 31, 1998, – the date that he was last insured. (Tr. 109-118). Accordingly, Dupree appealed the adverse decision to the Appeals Council. On March 27, 2009, the Appeals Council granted Dupree's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 119-122).

On remand, supplemental hearings were held before ALJ Thomas Bundy on August 3 and September 28, 2009, and on April 27, 2010. (Tr. 28-94). In an August 4, 2010, written decision, Judge Bundy determined that Dupree was not disabled prior to the date that he was last insured for disability benefits, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that existed in substantial numbers in the national economy. (Tr. 8-22). Dupree again appealed the adverse decision to the Appeals Council. On January 4, 2011, however, the Appeals Council denied Dupree's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On March 2, 2011, Dupree filed the instant complaint for review before this court. He contends, in effect, that the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.

2

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled

under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

    (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

    (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The court observes that Dupree remained insured for purposes of his Title II claim only through December 31, 1998. *See* Tr. 14. Thus, the relevant period extends from July 21, 1995, – his alleged disability onset date, through December 31, 1998, – the date that he was last insured. *See* Tr. 11.

I.  **Steps One, Two, and Three**

The ALJ determined at Step One of the sequential evaluation process that Dupree did not engage in substantial gainful activity during the relevant period. (Tr. 14). At Step Two, he found that he suffered from severe impairments of degenerative joint and disc disease. *Id*.[1] He concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 16).

II. **Residual Functional Capacity**

The ALJ next determined that during the relevant period, Dupree retained the residual functional capacity for light work, except that he could stand/walk for no more than two hours in an eight hour day. (Tr. 16).[2] He could lift/carry up to twenty pounds occasionally and ten pounds frequently. *Id*. He could sit, stand, and walk for up to one hour at a time. *Id*. He could sit for a total of six hours in an eight hour work day and stand/walk for two hours. *Id*. He could

---

[1] The ALJ determined that plaintiff's depressive disorder was non-severe. (Tr. 14-15). Plaintiff does not contest this determination, or otherwise argue that the ALJ's residual functional capacity assessment failed to contemplate any functional limitations stemming from a mental impairment.

[2] Light work contemplates:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

occasionally reach overhead and push/pull bilaterally. *Id*. He could frequently perform all other reaching, handling, fingering, and feeling. *Id*. He could occasionally operate foot controls bilaterally. *Id*. He could occasionally climb ramps and stairs (but never ladders or scaffolds), balance, stoop, or kneel. *Id*. He could never crouch, crawl, or tolerate exposure to unprotected heights or dangerous machinery. *Id*. Finally, he could operate a motor vehicle no more than occasionally. *Id*.

     At the outset, the court emphasizes that by October 2005 when plaintiff filed the instant applications, he had a residual functional capacity for less than sedentary work, which rendered him disabled. *See e.g*., Tr. 1005-1012, 989). The difficulty, of course, is that plaintiff was only insured for disability insurance benefits through December 31, 1998. The court notes, in this regard, that "[a] claimant is eligible for benefits only if the onset of disability began on or before the date the claimant was last insured." *Ivy v. Sullivan,* 898 F.2d 1045, 1048 (5th Cir. 1990). The claimant bears the burden of establishing a disabling condition before the expiration of his insured status. *Id.*

     Social Security Ruling 83-20 outlines the policy and procedure by which the Commissioner should determine the onset date of a disability. SSR 83-20 (1983). "Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." *Id*. With slowly progressive impairments, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1997) (quoting, SSR 83-20). In such cases, "when the medical evidence regarding the onset date of a disability is ambiguous and the [Commissioner] must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The [Commissioner] cannot make such an inference without the assistance

of a medical advisor." *Spellman*, 1 F.3d at 362.

Judge Bundy - the ALJ who rendered the Commissioner's final decision in this matter - consulted a medical expert, orthopedist, Ollie Raulston, Jr., M.D., to assess the effects of plaintiff's impairments prior to the date that he was last insured. Dr. Raulston reviewed plaintiff's extensive medical records and completed a medical source statement that Judge Bundy effectively adopted as his residual functional capacity assessment. (Tr. 1155-1180).

Plaintiff necessarily contests the ALJ's decision to credit Dr. Raulston's opinion(s). The court notes that Dr. Raulston ended up providing two medical source statements because when he was cross-examined regarding his first statement, Raulston expressed some doubt as to whether he limited his opinion to plaintiff's condition as of the date that he was last insured. *See* Tr. 60-66. Accordingly, the ALJ re-submitted the interrogatories to Dr. Raulston for reconsideration. Dr. Raulston's second medical source statement is slightly more restrictive than his first. *Compare* Tr. 1174-1179 with 1161-1166. Plaintiff contends that Dr. Raulston's credibility is undermined by the fact that his first medical source statement purportedly found Dupree capable of working through at least 2006 – a period during which the ALJ and the notoriously conservative consultative physician, David Hebert, M.D., agreed that Dupree was unable to work.

Upon review of Dr. Raulston's initial interrogatory responses, however, it is not clear that he did overlook the instruction to consider plaintiff's impairments only for the period prior to December 31, 1998. For instance, all of the physical impairments identified by Dr. Raulston are included in medical records that pre-date December 31, 1998. *See e.g.*, Tr. 1157, 1027-1028, 448-450. Clearly, if Raulston had been contemplating the entire period, he would have included additional physical impairments related to plaintiff's cervical spine – an injury that did not

7

become symptomatic until *after* the relevant period. Moreover, in his original medical source statement, Dr. Raulston noted that the limitations were present "as of 12-31-98." (Tr. 1166). Although the box on the form asked on what date the limitations were "first present," it is likely that Raulston merely intended to emphasize that the limitations were present as of December 31, 1998.

The court further notes that in his responses to the second set of interrogatories, Dr. Raulston stated that his opinion regarding residual functional capacity was based principally on objective findings. (Tr. 1172-1173). He conceded that *if* plaintiff's pain remained at a six or seven on a ten point scale, then he doubted whether Dupree could maintain employment because he then would suffer problems with attention, concentration, and excessive absences. *See* Tr. 1173. Plaintiff emphasizes that at the supplemental hearing, Dr. Raulston indicated that plaintiff likely would have to lie down outside of normal break periods, and miss at least two to three days of work per month. *See e.g.*, Tr. 44-45. Again, however, this testimony arose in the context of plaintiff reporting his pain as a 6 or 7 on a 10 point scale, and the assumption that he constantly experienced that level of pain. *Id.*[3]

Ultimately, however, the ALJ did not credit Dupree's statements to the extent that they were inconsistent with the residual functional capacity assessment. (Tr. 16). The record contains substantial evidence to support the ALJ's credibility determination. For instance, it is manifest that Dr. Raulston based his opinion upon the findings of Sidney Berry, M.D. who examined plaintiff during the relevant period, and questioned the consistency of plaintiff's pain. On June

---

[3] The court notes that on August 22, 1997, Dupree scored his pain as 31/100. (Tr. 1114). He had but mild pain on back extension. *Id*. Dr. Ledbetter noted that he was just about at maximum medical improvement. *Id*. Dupree even expressed an interest in returning to work. *Id*.

23, 1997, Dr. Berry noted that Dupree had no limp on walking. (Tr. 1128-1130). He could squat up to fifty percent and had no knee pain. *Id*. He could heel and toe walk bilaterally. *Id*. Berry opined that Dupree was at maximum medical improvement from his knee injury, with a 15% permanent physical impairment of the left lower extremity. *Id*. He noted that an April 8, 1997, lumbar MRI appeared negative except for some degenerative signal changes at L4-5. *Id*. There also appeared to be possible facet hypertrophy primarily at the L5-S1 joints bilaterally. *Id*. Berry noted discrepancies in the straight leg raising test, and that Dupree had no motor deficit. *Id*. Berry did not recommend that Dupree return to activities that required repetitive squatting, deep knee bending, or repetitive lifting or heavy lifting. *Id*. However, he did not assign any other limitations. *Id*.

Dupree returned to Dr. Berry on December 22, 1997, (*i.e.*, a little over one year before his last date to establish disability) for his persistent, chronic low back and right leg pain complaints. (Tr. 1131-1132). Dupree continued to complain of severe pain in his right lower back and posterior thigh. *Id*. He stated that he had pain all of the time. *Id*. He was a little better walking and standing than sitting. *Id*. Dupree had started a work-hardening program, but could not perform the exercises because of pain. *Id*. Dr. Berry noted, however, that according to a physical therapist, D*upree's subjectively high pain reports did not match his movement patterns*. *Id*. Berry remarked that since the last time that he had seen Dupree, his movements and behavior had become "much more magnified." *Id*. Dupree had a walking cane with him, and did not want to sit. *Id*. He would not make an effort at heel and toe walking, despite being able to hold his weight on his heels and toes. *Id*. He made minimal effort at extension or left lateral flexion because of pain. *Id*. Nonetheless, he appeared to have good quad and hip strength. *Id*. EMG conduction studies revealed no evidence of radiculopathy of the right lower extremity. *Id*. Berry

9

observed that plaintiff's pain description was not typical of mechanical back pain. *Id*. His pain descriptions did not match that which is normally seen with spinal stenosis. *Id*. Based on plaintiff's pain behavior, Dr. Berry doubted that plaintiff would benefit from any surgical procedure. *Id*.[4]

The court further notes that on February 18, 2003, plaintiff's pain management doctor, John Ledbetter, M.D., documented that plaintiff had undergone a functional capacity evaluation which demonstrated a residual functional capacity for light work above the waist, and for no work below the waist. (Tr. 465-466). Importantly, however, plaintiff passed only one-third of the symptom magnification test. *Id*.

In sum, while there is no question that the record contains evidence that plaintiff's physicians generally found him to be credible, this opinion was not uniform, and there was evidence of pain and/or symptom magnification. *See* discussion, *supra*. This evidence provides substantial support for the ALJ's credibility determination, and his decision to credit Dr. Raulston's medical source statement, which was principally premised upon objective findings. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Story v. Astrue*, Docket No. 08-10234 (5th Cir. Sept. 30, 2008)

---

[4] On July 1, 1998, plaintiff's treating orthopedic surgeon, James Zum Brunnen, M.D. noted that there was no change in plaintiff's status. (Tr. 1044). Plaintiff had no neurological deficit and no weakness in his legs. *Id*.
  Plaintiff eventually reported a fifty percent reduction in his pain medication after he underwent lumbar surgery in February 1999. *See* Tr. 1055. The relief, however, proved short-lived, because on September 29, 1999, he was involved in a motor vehicle accident that again exacerbated his symptoms. (Tr. 1063).

(unpubl.) (ALJ fulfilled obligation to make explicit credibility findings when he considered claimant's allegations and found them inconsistent with the medical evidence).

Plaintiff nevertheless contends that rather than giving effect to the opinion of a non-treating, non-examining orthopedist, the ALJ instead should have credited a September 22, 2006, To Whom it May Concern letter issued by plaintiff's treating orthopedist, James L. Zum Brunnen, M.D., wherein he stated that Dupree had been disabled from any type of day to day employment since an injury at work in 1995. (Tr. 1013). However, a physician's statement that a claimant is disabled or unable to work is accorded no special significance under the regulations. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). The statement also is not entitled to any weight because it is not supported by the medical record. For example, an April 16, 1996, examination report indicates that Dupree was returned to light duty after his September 1995 knee surgery; however, there was no work available. (Tr. 1015-1016). Likewise, on more than one occasion in 2003-2004, Dr. Zum Brunnen himself indicated that plaintiff was capable of sedentary work! *See* Tr. 410-419.[5]

Finally, plaintiff emphasizes that a non-examining agency physician, Edward Dean, M.D. signed off on a residual functional capacity assessment form that precluded plaintiff from ever performing postural activities. (Tr. 1005-1012). While Dr. Dean so opined, plaintiff overlooks the fact that the form was limited to the period from October 1, 2005, until August 2, 2006. *Id.*

---

[5] While Dr. Raulston conceded during cross-examination that typically he would defer to the opinion of a treating and/or examining physician, he stated that such deference was warranted only so long as the physician remained objective and did not become merely an advocate for the patient. (Tr. 42). Given the inconsistency between Dr. Zum Brunnen's letter and his own records, there is substantial evidence to discount Zum Brunnen's statement. *See Nugent v. Astrue*, 2008 WL 2073891 (5th Cir. May 16, 2008) (unpubl.) (ALJ entitled to discount treating physician's conclusory statement because it contradicted earlier treatment notes, objective medical findings, and other examining physicians' opinions).

For the relevant period, i.e. until December 31, 1998, correspondence between the disability examiner and Dr. Dean indicates that Dean was in agreement with a residual functional capacity for medium work, limited to two hours standing/walking per day. (Tr. 989-990).[6]

In sum, the only physicians to have completed medical source statements for the relevant period were non-examining orthopedists. After reviewing the medical records, both of them (Raulston and Dean) opined that for the period until December 31, 1998, plaintiff had a residual functional capacity that was at least equal to that ultimately adopted by the ALJ. Accordingly, the court finds that the ALJ's residual functional capacity assessment is supported by substantial evidence.

### III. Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Dupree could not perform his past relevant work. (Tr. 20). Accordingly, he proceeded to step five. At this step, the ALJ determined that plaintiff was a younger individual, with a high school education, and that transferability of skills was immaterial. *Id*. With the assistance of a vocational expert, the ALJ determined that during the relevant period, there were a substantial number of jobs that existed in the national economy that plaintiff still could perform, given his vocational factors and residual functional capacity. (Tr. 20-21, 47-58).[7]

---

[6] Albeit, the actual residual functional capacity assessment form does not appear in the record. Dean was privy to the July 2006 findings by consultative physician, David Hebert, M.D. (Tr. 975-980). Of course, Dean implicitly found that Hebert's findings were not relevant to the period at issue.

[7] The vocational expert identified two representative job categories at the light or sedentary level, including, companion, DICTIONARY OF OCCUPATIONAL TITLES ("DOT") Code # 309.677-010 and telephone solicitor, DOT Code # 299.357-014. (Tr. 21, 47-48). There are well over one million such positions in the United States and over 20,000 in Louisiana. *Id*. These jobs constitute a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and

Plaintiff contends that the ALJ's step five conclusion is flawed because the vocational expert testified that if Dupree had to lie down outside of normal work breaks or if he had to miss more than two days of work per month, then there would be no jobs that he could perform. However, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's hypothetical(s) to the vocational expert faithfully incorporated all of the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra*.

## Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled during the relevant period. In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was not uniform, and according to plaintiff, should have compelled a different result.[8] However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).[9]

---

10,000 nationally, constitute a significant number).

[8] In fact, as plaintiff emphasizes, the original ALJ who heard this matter was predisposed to deciding the matter in plaintiff's favor.

[9] Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error,

13

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Dupree was not disabled under the Social Security Act during the relevant period, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)© and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 22nd day of June 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here. Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster, supra; Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).